Our next case is Calderon v. Collins, No. 24-1837. Counselor Schoenker, did I get it right? It's pronounced Schoenker, Your Honor. Schoenker, okay. Apologies if my phonetic pronunciation was misleading in any way. And you reserve three minutes of time for rebuttal? Yes, yes, Your Honor. Okay, you may proceed. Good morning and may it please the Court. Sean Schoenker on behalf of Mr. Calderon. While the Veterans Court below purported to engage in a thorough analysis of Mr. Calderon's tolling claims, it did so in a manner that applied rigid categorical rules and incomplete and incorrect legal standards. Counsel, I have a question I'm going to ask both sides, okay? You make an argument that Barrett II in 2006 requires the government to provide, quote, all records in its possession relevant to contested jurisdictional issues. In 2011, the Supreme Court held in Henderson v. Shinseki that the 120-day time limit of Section 7266A isn't jurisdictional, although an important procedural rule. This appeal was dismissed below due to timeliness under 7266A. So it's not jurisdictional. The Secretary notes in a footnote they don't mean to suggest that it is jurisdictional, but engage in discussion of case law prior to Henderson only to respond to your assertions. In light of Henderson, does Barrett II still apply to require the provision of relevant records in a 7266A untimeliness dismissal? Why or why not? We think so, Your Honor. We think Barrett II's rationale that, you know, in cases like this where the veteran is put in an inequitable position as compared to the merits, where they are unable to have access to documents that are uniquely in the government's possession, that the rationale of Barrett still applies. And we would just note that post-Henderson, in Dixon v. Shinseki, and I believe in the Tumor case as well, this Court reiterated its holding in Barrett II, that the government has an obligation to provide those records when... Relevant. Relevant records when equitable tolling is raised based on a condition that is raised, that they have records that are relevant to that condition. What relevant records were not provided? There are a number of relevant records that are not provided. The Board decision, which was actually in the record below, cites a number of them from Appendix Pages 18 to 21. There were VA treatment records in the possession of the VA. There were private medical records that would have also been part of the RBA. What do these records show that the Veterans Court wasn't aware of? Those records were not produced in Mr. Calderon or the Veterans Court, and at this time, we do not know what exactly those records show, but we think that kind of flips the... You mean those records weren't produced. Did he ask for them? He did not ask for them, Your Honor, but we believe that Barrett II creates an affirmative obligation. No, I understand, but they have to be relevant, and it seems to me that the veteran, his arguments about tolling here, relied largely on the fact that he had to travel to Mexico to bring his father back, and that his father was suffering from dementia, which the Court looked at thoroughly, and also, I think there was some discussion about how he had to help take care of his wife during her illness. How do those records relate to any of those issues? They don't relate to those issues, Judge Hughes, but we do think that his response to the Veterans Court fairly raised the issue of equitable tolling based on mental illness, and the Veterans Court understood his response to be raising that issue by addressing it. He explained that... And the Veterans Court addressed the fact that he had some mental problems. It's in the record, and said that that wasn't sufficient to show equitable tolling here. The Veterans Court said that was insufficient to show equitable tolling based on the record before the Veterans Court, and our argument is that without those documents, those documents may assist Mr. Calderon in demonstrating the record necessary to show equitable tolling based on mental illness, and it kind of flips the... But all of that stuff that you're talking about is in the Board's decision, is it not? His... I don't know exactly what mental conditions they're talking about. The Veterans Court was aware of these mental conditions, and said it's still not enough to prevent him from either acting rationally or undertaking to file a timely notice of appeal. I think that you're asking for documents that just would further support what the Veterans Court already knew about his condition. You're not alleging there's some unknown condition that wasn't out there. Well, for example, those VA treatment records may contain statements by medical professionals and psychiatrists regarding the extent of his memory loss, how it impacts his memory, and the extent of his memory loss, how that would impact... Did he make that argument to the Veterans Court as a basis for tolling? He... I mean, look, the VA obviously has obligations to assist with all kinds of things, but when you've missed a deadline to file a notice of appeal within the 120-day period, the Veterans has to come... It's not the VA's duty to say no equitable tolling in the first instance. It's a veteran's obligation to come forth with sufficient reasons for equitable tolling, and he came forth with reasons, his father, his wife, some of his mental capacities. The Veterans Court looked at them thoroughly and said none of these are sufficient for the entire time period. I think the Veterans Court accepted the fact that him having to travel to Mexico and bring his father back was a good reason. That all happened right around the time the board was issuing the decision. That can't account for the entire 69 days of delay. I mean, he got... That decision was issued right before he got back, so he has to have something beyond that exceptional circumstance. And the Veterans Court looked at his wife's illness and his mental things and says, these are not sufficient for this period of delay. His... The fact that he has a caregiver for his wife is not something that's extraordinary that would prevent him from filing a notice of appeal. And his mental conditions recognized by the board and the Veterans Court are also not sufficient. That's all application of law to fact, right? Respectfully, Your Honor, I think Barrett, too, makes quite clear that when the issue... When a veteran alleges equitable tolling based on mental illness in a way that impeded their timely filing of their notice of appeal, Barrett, too, states that the government has an affirmative obligation to provide the Veterans Court and the veteran those documents. Those documents, at best, would lead to a conclusion that Mr. Calderon suffers from PTSD and depression, right? Well, the documents may also contain statements... That's what you're alleging. That's correct, Your Honor, but the PTSD and depression... Mr. Calderon alleges that a symptom of his PTSD and depression is memory loss and increased forgetfulness aggravated by what was happening during this period regarding the loss of his parents and having to provide care for his parents. And I think... But he was able to provide care for his parents, wasn't he? He was able to provide care for his parents with assistance... Care for his parents involves, for example, providing them with medication. Correct, Your Honor. It involves taking them to appointments. Correct. Isn't that enough evidence for the board to say, well, he may have some memory loss, but obviously it's not enough to prevent him from doing things that require scheduling and make a conclusion that he could have also mailed the notice? Well, I think, Your Honor, this gets to kind of the Barrett 1 issue we raised, which is that the Veterans Court's decision only ever applied the second prong of Barrett 1. And the government does not dispute that those two prongs are two different ways of tolling based on mental illness in the red brief. And so one cannot deliberately decide to do what one does not remember, I think, is a way of thinking about this. There can be ways that mental illness affects one's deliberate decision-making, but is not so incapacitating so as that it cannot function in daily life, which goes to the second prong of Barrett 1. And so the Veterans Court never considered that basis. Did you allege the PTSD, mental illness, and dementia aspect of that, that it covered the entire period that we're talking about, the tolling period? We do allege that the PTSD and his memory loss tolls the period to the point which he remembered. You're saying memory loss, but that's not the standard, right? What you think that they didn't do from Barrett 1 is that he couldn't engage in deliberate decision-making because the Veterans Court didn't specifically reference that. It talked about him being incapable of handling his own affairs. But all the stuff that Judge Wallach just pointed to you about arranging for doctor's appointments, arranging for, I think he even arranged for a care facility for his father and stuff like that, all of that stuff goes to both things. Clearly, if he can do that, he's engaging in deliberate decision-making. I agree with you that they can be relevant to deliberate decision-making. Where I disagree is that I think they do go towards more of the inability to handle affairs and function society prong because there are ways that one can function in society, but have a mental illness that incapacitates them with respect to the timely filing of their appeal. And I think it's helpful to think about... So he can undertake the gargantuan task of finding a care facility for his father who suffers from dementia, but he can't mail in a notice of appeal? You've got to point to some legal misinterpretation. Even now, what you're pointing to is, at best, a misapplication of a legal standard to the facts of this case. And we don't even have jurisdiction over that. Respectfully, Your Honor, I don't think the Veterans Court ever applied the full legal standard to the facts of this case. When you use the word apply and say that that was error, then that's a misapplication of law to fact. Even if it is a misapplication, we don't have jurisdiction. Respectfully, Your Honor, I think that... They have to have misunderstood and articulated the wrong legal standard, and they didn't do that. Did they? Well, I think they did. In the Veterans Court decision, where do you think they articulated the wrong legal standard? I think, Your Honor, when the Veterans Court states that he has the burden of proving that the particular infirmity caused him to be incapable of handling his own affairs or unable to function in society, that is an incomplete recitation of the legal standard. And permitting the Veterans Court, which the Secretary concedes is a disjunctive standard with two different prongs. Permitting the Veterans Court to just pick and choose which prong it applies, I think, is a legal error. Because the Veterans Court is obligated to apply the full legal standard in the first instance. I do have a question for you. Make sure it comes up and everybody can address it. But I think one of the arguments is that the Veterans Court adopted a categorical rule with respect to that taking care of ailing parents cannot be an extraordinary circumstance under equitable tolling. Did I say that right? Can you articulate that argument? Yes, Your Honor. I think, to be brief, our argument is that the Veterans Court's analysis was one sentence. That it was unconvinced that appellant's care for a sick parent could qualify as an extraordinary circumstance. Full stop. Isn't that a factual determination? Well, we think that that statement read in context of the full order is actually more of a categorical rule for two reasons. First is the Veterans Court did not do any further case-specific analysis, as this Court has said in Sneed and other cases, that is required as part of equitable tolling. Second is the Veterans Court never addressed the care for Mr. Calderon's mother. And if the in-home care for Mr. Calderon, if they were applying, if the Veterans Court was applying She's a parent, too, isn't she? She is. She is. But that paragraph is in the context of the Veterans Court decision. You think the insufficient, in your view, analysis demonstrates that they created a categorical rule? Not necessarily, Your Honor. I think it's the combination. They cited the right case law. They understand that they can't create categorical rules because we told them that. Why would we presume that they did that anyway rather than just make the case-specific determination that the circumstances here of his care for his parents was insufficient for equitable tolling? Well, I think this Court made clear in James and in other cases that the question is what standard the Veterans Court applies, not what it recites. And in James, the Court also cited Sneed and made the same statement. Yes, and this is a better reading here. They understand that they don't create categorical rules. And in this case, the care for his parents was insufficient, as a matter of fact, to toll the statute or the time for appeal. Respectfully, Your Honor, our position is that given the way the Court's order reads and the failure to address the in-home care for his mother, we believe that it reads as a categorical rule. Your answer to my prior question really is yes. You view the paucity of explanation here as creating a categorical rule rather than just, in your view, an unexplained decision. Well, we think it can read as a categorical rule, but we've also separately made arguments in the brief why the failure to address the in-home care for the mother would also be a legal error. Okay, you're out of time. We'll restore some of your rebuttal time back. Thank you, Your Honor. Okay, thank you. Counselor Yeo? Thank you, Your Honor. May it please the Court. I guess I'll start by addressing the Barrett II issue. So our first argument there was, I mean, that issue was not raised to the Veterans Court. So there was Mr. Calderon was pro se initially, but after the dismissal motion, the order there, he obtained counsel. There was a reconsideration motion filed. Mr. Calderon's counsel could have raised that issue to the Veterans Court, and I think the Veterans Court would have asked for the records. He could have asked for the records. But even just sort of taking a step back, I mean, a lot of the Barrett II decision is in 2006. We now have a situation where the VA has gone through a long history of getting records in electronic form. And there's certainly a method, even if your attorney is not accredited, there's a method for the individual to fill out a form, a written request, to get those records. So even in the situation at reconsideration where he's represented by counsel, they can submit the form and get these records. What we have now is just complete speculation about what is in the claims files, which they could have gotten all along this period of time. But sort of to more fully address the Barrett II issue, you know, there's a couple of points there. One, just in terms of applying Barrett II, what this court held in Tumor was you're really looking at whether these records were actually necessary. There's no, like, actual dispute here that the records, even now, there's no allegation that there's some specific record saying X that's out there. It's just sort of a blanket inquiry that we. How can he make that assertion if he hasn't seen the records? Well, because he's making allegations about how he's not, this is in the context of equitable tolling, why he cannot actually have met the deadline. So if there is something out there that would help on that point. So the Veterans Court accepted sort of as true these sort of, you know, and whatnot, but also Mr. Calderon submitted other records. If you take a look at Appendix 34, there's records there that essentially states that although there is, you know, some issues with forgetfulness, it doesn't affect the function. Had he have asked for the records, would the board been compelled to provide them or the administration? Well, Your Honor, it's the Veterans Court would, you know, we're at the Veterans Court. But if he had asked the VA, the VA could have, you know, provided them. They probably would have provided the claims file. The VA would be under an obligation to provide it at that point had he asked for the records. Well, I think I want to just to be clear there, there's a difference between them being able to. There's not a yes or no to this? Well, there's a standard. There's an obligation to provide the records if he requested them. Well, if he filled out the form, yes. I mean, there would be, you know, if he went forward and did a written request. That obligation exists regardless of the content of the record. Nobody knows at that time. But if he asked for the records, you're obligated to provide them. If he had asked for the records under just sort of the normal VA procedure, if there's a written request, you can get the claims file. Any veteran? Yes, any veteran could do that. It could have happened all along this period of time. I mean, that's not sort of a new process. And I think part of the problem. But the point here and the issue is that whether there's an obligation to provide the records if a veteran requests them. That's the question I'm asking you. Well, it's. You still haven't answered it well. I mean, you're saying, yes, there's an obligation, but he could have gotten them anywhere else and he could have done other things. Well, I think there's two separate things. Let me give you some argument advice. When the court starts a question with two words, any veteran, you don't get to decide what the question is. You said, yes, any veteran can, and you went on. I hadn't finished my question to you. Well, I apologize, Your Honor. You should, but you should also profit because my understanding is that any veteran can go online to the Department of Veterans Affairs and pull up an electronic page in which they enter their name and whatever the veteran's ID number is and so on. And at that point, on a records request, and at that point, the Department of Veterans Affairs is obligated to provide them with that information. Am I incorrect? No, Your Honor, you're not. There's a form. But they're obligated. Form 2010-206 to, yes, to provide the records. But again, I'm. But the obligation is because of different statutory. You're interrupting again. You shouldn't do that. The obligation is because of different statutory and regulatory provisions. It's not an obligation engendered by our equitable tolling law. That is the records have to be provided when relevant. And so the Veterans Court could order records to be provided when relevant. The VA, as a general course, whether they have an appeal to the Veterans Court or not, has to turn over records. I assume there's no reason for you to dispute that. I mean, it's just a matter, as Judge Walling points out, it's just a matter of veterans are always entitled to their treatment records. And he could have gotten them here, and he didn't. Right? That's correct, Your Honor, yes. If I may say. Well, I don't understand why you're fighting the notion that the VA has an obligation to turn over records. It is a simple yes or no question. Maybe what you're fighting is the notion that it was obligated under equitable tolling precedent. And if that's what you were trying to say, then I understand it. But that's not what you were saying. Respectfully, Your Honor, that's exactly what I'm trying to say, that there is. We weren't making that distinction, because if the question is generally is the VA obligated to turn over records, the answer is yes. Full stop, right? Yes. They are entitled to get the records through the VA. They can fill out. I mean, the records that are identified are the ones he identified from the board decision, which were referenced by the board in a discussion of conditions that the Veterans Court accepted as true. So there's no indication in the record here that these records provide any additional information at all. There's not some undiscovered reason out there for equitable tolling, as I understand it. The Veterans Court credited every single argument he made as a matter of fact that he had to care for his father. He had to care for his mother. Maybe he had to care for his wife. He had to do all this kind of stuff. They didn't dispute and say, no, that's not true. They accepted all of that and said, still, as a matter of equitable tolling, that's insufficient. So what else in those records out there could they need, right? I assume your answer is there's nothing, because he hasn't identified another basis for equitable tolling that there are records that are relevant to that have not been produced. Can I turn you to the categorical issue? If the Veterans Court's decision said care for family members is never a basis for equitable tolling, you would agree that's legally incorrect, right? Yes, we would agree with that. I mean, that just goes into the sort of Snead and James line of cases, but that's not what was said here. And so sort of implying that the Veterans Court, who laid out the correct law, cited the correct cases, didn't state that it was applying an incorrect rule of law, that would be implying that they did, doesn't really seem to comport with. So did the Veterans Court improperly adopt a categorical rule that taking care of your parents that have dementia while you yourself have the disease, that that cannot be grounds for exceptional circumstances in analysis involving equitable tolling? No, Your Honor. They didn't adopt a categorical rule. They tied it back into the facts. Where did they explain what they did do? Well, I mean, I think if you look at Appendix 4, I mean, I think, well, even starting before that, Appendix 2 and Appendix 3 of the decision, the Veterans Court went through in detail and identified the various explanations that Mr. Calderon set forth with respect to equitable tolling. And then, you know, with respect to the issue that's the sort of statement that's been seized upon, it's really the statement on Appendix 4, sort of maybe the sixth line of the first full paragraph, and the court is unconvinced that appellants caring for his sick parent is an extraordinary circumstance warranting equitable tolling. What that's tying back to is the explanations that — said that it was unconvinced that Mr. Calderon's caring for his sick parent is an extraordinary circumstance warranting inequitable tolling. That almost sounds like a categorical rule. All you have to do is substitute somebody else's name for Mr. Calderon. And one of the reasons is because I don't see the analysis in the decision of the Veterans Court. Well, again, I think if, you know, pointing back to Appendix 2 and 3, I mean, what the Veterans Court was doing was summarize — they have this — you know, just taking a step back, the Veterans Court has Mr. Calderon's submission. It lays out a number of different explanations. And it goes through those, and with respect to, you know, with respect to this sentence, the Veterans Court could have said something along the lines of, look, there's — it's impossible for taking care of a sick parent to be a basis for equitable tolling. But that's not — they did not do that. They left open the possibility under a different set of facts. Like, for example, if somebody — Why did they do that? Well, just based on the plain language of that statement, because it's tying into his parent. The statement that I read? The statement that you read. It's tying into his sick parent, not just every — That's the full basis of the Veterans Court's analysis, that statement that I read? I would point out that that so-called sentence is actually a clause, because it begins with an and, and it ties — because it begins with an and, it ties back to the prior sentences. It ties back — It ties back to the whole paragraph, right? The beginning of that paragraph says, well, the court is sympathetic to the events the appellant describes, which is referencing the recitation of facts earlier on, which I think you've been alluding to, and recognizing that all of these are the basis for the argument, and then explaining they're insufficient in this case to just be an extraordinary circumstance. I mean, I understand. That is entirely correct. This is not the best opinion in the history of Veterans Court's opinions. It could have been, you know, longer and more fulsomely explained. On the other hand, our job is not to correct opinion writing. It's to discern if there's any legal error. And I see no statement in here that says, as a matter of law, the care of six parents can never be an exceptional circumstance. That is entirely correct, Your Honor. And I also would say that, you know, Mr. Calderon gave this submission and has a bunch of different reasons. And in this submission, there's a lot of, you know, there's a lot of documents that were provided about, you know, powers of attorney. He was taking, you know, for example, he was taking care of his parents at the time, you know, and there's a lot of information in there. And so for the Veterans Court, you know, although that sentence says what it says, I think read in the context of what was provided to them, that's more than sufficient to, you know, not be applying a categorical rule. And those are sort of the per se, you know, the sort of legal issues that Sneed and James had identified. I do just want to circle back very quickly to Judge Wallach's question just sort of about Barrett II. I mean, I think, you know, we address Barrett II in the context of, you know, the standard, whether these documents were necessary. And we obviously pointed out in the footnote that this really isn't a jurisdictional issue. So if you do look at Barrett II, there's a couple of things. One- Before we go there, let me ask you a question. So the Veterans Court did make a determination that traveling abroad or being abroad could be an extraordinary circumstance. That's correct, Your Honor. I mean, I think- What if you're traveling abroad to take care of your elderly parent? Based on the comment of the Veterans Court, that is not an extraordinary circumstance, the fact that you've got to take care of your elderly parent while you travel? Well, Your Honor, there has to be a fact-specific inquiry. So I think in a certain situation, sure, let's just say your parent was in China. I see. I do see where the Veterans Court is making factual findings, and it does do that. But the problem is the way everything is wrapped up, and it's wrapped up with that comment that I've been pointing out to you. He's got two elderly parents. One of them he takes to a foreign country in order to put him into hospice. He's got his mother who's also elderly with dementia. He's got his wife that got sick with COVID. All this during this period of time of months that we're talking about. Then he himself has dementia, PTSD-related dementia. It just seems to me in totality, though, in totality, the totality of the circumstances could warrant a finding of exceptional circumstance. I'm not saying that it does. That's up to the Veterans Court and the Board to determine. But what I'm saying is that when they wrap up this analysis that you're talking about with this one statement, that seems insufficient to me. And it seems to me that somebody can come along later on and say, well, we have a case here where the Federal Circuit says that taking care of a sick parent is not a special circumstance that can meet equitable tolling. Respectfully, Your Honor, I think the response to that would be, these are individual fact-specific cases. This Calderon case did not set forth a rule that the Veterans Court was not trying to do that. And this Court would not be saying that taking care of an elderly parent can never be an extraordinary circumstance. That's just not what's going on here. I don't doubt that the Veterans Court was trying to do that, to hide the ball remissly. But we reverse the Board and the Veterans Court all the time, often, because the Board or the Veterans Court misapplies the law or makes errors, what could potentially be related here. So anyway, you've answered my question, and I appreciate that. May I say one more thing, though? Sure. I think with respect, much of the equitable tolling law is really application of law to facts, which is really outside this Court's jurisdiction. What we have here, when you look at Snead and Aldrich and cases like that, there's a very narrow set of circumstance where what we're talking about is actually employing an incorrect standard. And so that's when we're talking about per se rules or just limiting it to individual fact, you know, comparing it to individual fact patterns. So when we're talking about someone else may look at this fact pattern and think and determine that there was a basis for equitable tolling, that's really just application of law to facts. And if there's nothing further, we would just ask that the Court affirm the decision of the Veterans Court.  Just a few points on rebuttal, Your Honor. Starting with the extraordinary circumstance argument. We understand, I think at Appendix 3, the Veterans Court does summarize a lot of the facts surrounding Mr. Calderon's case and what was occurring. We determined that there's no categorical rule, then there's no legal error, right? And it's just application of law to fact. That's correct. And even if we disagreed and thought it should have been an extraordinary circumstance, we can't assess that. We can't review that. That's application of law to fact. That's outside of our jurisdiction. That's correct, Judge Hughes. We respectfully submit here that in this context with this statement, where there was no explanation provided other than that one sentence, all you would have to do is, to Judge Reno's point, all you would have to do is substitute his, in any statement from a Veterans Court going forward, just have a short statement and make it about his or her, and that would be enough. What was the categorical rule that you argued was established? The categorical rule was that the care for a sick parent could not qualify as an extraordinary circumstance. Why would we read it that way when the Veterans Court has cited the correct law? You're saying that going forward they can cite this case for a categorical rule. Well, the Veterans Court will know they can't do that, and they didn't do that here. They said specifically his care for his parents is not an exceptional circumstance. You're worried maybe in the future that that will be viewed as a categorical rule? Well, if it is, then we'll reverse it. But I suspect the Veterans Court is not going to do that. I don't understand when it is tailored very specifically to the facts of this case why you want to, because the other thing is even if we send it back, all they're going to do is say, no, we didn't create a categorical rule. We said based on these circumstances. Respectfully, Your Honor, I don't think just the inclusion of the possessive adjective his necessarily means the court applied the fact-specific analysis. But it's also not necessarily indicative that they applied a categorical rule. And why would we ever read something in a way that's a legal error when it could be read to be legally not an error? Well, as we argued in – Especially when they cited the right case law. Well, I think the James case makes quite clear that just the citation of the case law is not sufficient. And two, in James' statement – Sure. If they cite the correct case law and then make a legal misstatement somewhere else, this is not a legal misstatement. In order for it to be a legal misstatement, you have to say that, well, even though it says it's about the factual circumstances here, they really meant in all circumstances, right? That's what we have to read it as for you to prevail. That's correct, Your Honor. I would just point that in the James case, the statement at issue was that appellant's fallen mailbox flag was not something that – it was – appellant's fallen mailbox flag was not an extraordinary circumstance in the Veterans Court decision. Yes, in that case, we determined that they were creating a categorical rule that the mailbox stuff could never be a basis. That's the way we read it. But that's not – and the Veterans Court wrote it that way, too. They didn't write it, in this circumstance, the mailbox flag was insufficient. They said the mailbox flag is insufficient. This one is in this circumstance. I understand, Your Honor. If I could just make one point on Barrett 2. I understand I'm running into – past my rebuttal time. I want to ask you a question. Since we're discussing grammar, address my point that the statement upon which you rely as a categorical rule is not, in fact, a complete sentence and is necessarily conjoined with a prior language. A complete sentence cannot begin with and. It is a conjunction. It's unclear what the and is exactly pulling in there, Your Honor. But it is pulling in something. You would agree that. I don't necessarily agree with that, Your Honor. I think and can just mean the Veterans Court is making an additional point. That, in addition, the court is unconvinced that appellants caring for a sick parent is an extraordinary circumstance warranting equitable tolling. That's how I read that statement, Your Honor. So I don't think it's pulling in anything more than that. Okay. We thank you for your argument. We thank all parties for their arguments. Thank you, Your Honor. And the case will be taken under submission.